IN THE UNITED STATES DISTRIC COURT
CENTRAL DITRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JACQUELINE G. BELK,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 1:13-cv-01364 |

**Order and Opinion**

Before the Court are cross-motions for summary judgment ([D. 7](#) & [D. 16](#)) on Ms. Belk's claim for Social Security Disability benefits and Supplemental Security Income. For the reasons set forth below, this Court REVERSES the decision of the Commissioner to deny Ms. Belk benefits and REMANDS this matter for further proceedings consistent with this Order and Opinion.

**I**

Ms. Belk filed an application for Social Security Disability benefits on January 8, 2007, alleging disability since May 2, 2006. ([D. 5 at ECF p. 38](#)). Her claim was denied initially ([D. 5 at ECF pp. 40-42](#)) and at reconsideration ([D. 5 at ECF pp. 48-51](#)). Ms. Belk requested an administrative hearing on October 9, 2007. ([D. 5 at ECF p. 52](#)). Ms. Belk subsequently filed an application for Supplemental Security Income on April 9, 2009, which was escalated and merged with her claim for SSD benefits. ([D. 5-5 at ECF at pp. 40-50](#)). A hearing was held before Administrative Law Judge ("ALJ") Barbara Welsch on October 7, 2009. ([D. 5-4 at ECF p. 65](#)). By decision dated November 19, 2009, ALJ Welsch found Ms. Belk not disabled. ([D. 5-4 at ECF pp. 62-

74). Ms. Belk requested review of the ALJ's decision by the Appeals Council (D. 5 at ECF p. 35).

On March 24, 2011, the Appeals Council remanded the case for evaluation of new and material evidence, further evaluation of the treating source opinions, further consideration of Ms. Belk's maximum residual functional capacity, and to obtain evidence from a medical expert and vocational expert. (D. 5-5 at ECF pp. 7-10). A second hearing was held before ALJ Welsch on August 13, 2012. (D. 5-7 at ECF pp. 89-110). By decision dated August 27, 2012, ALJ Welsch again found Ms. Belk not disabled. (D. 5 at ECF pp. 16-30). Ms. Belk requested review of the decision by the Appeals Council on September 10, 2012. (D. 5 at ECF p. 13). However, the Appeals Council denied the request for review on April 16, 2013. (D. 5 at ECF pp. 9-12). This was the final act of the Commissioner, and this case followed.

## II

Ms. Belk was a 49 year old woman at the onset time of her alleged disability. She completed her education through the eleventh grade and performed past relevant work as a collection clerk, cashier, clerk-typist, cashier-checker, bartender, and waitress. (D. 5-1 at ECF p. 4; D. 5-1 at ECF at p. 35; D. 5-5 at p. 70). In her application for benefits, she claimed the following illnesses, injuries, or conditions which limited her ability to work: Back pain, high blood pressure, heart burn, a bad cough, two fractures in the tail bone, two degenerative discs, scoliosis, and arthritis in the back. (D. 5-1 at ECF p. 30). She claimed these illnesses prevented her from sitting or standing for longer than 10 minutes and that housework caused back pain, pain in the lower back, and constant aching pain. Id.

Among the medical records and opinions before the ALJ were records from the Heartland Community Health Center, which included completed Multiple Impairment Questionnaires (MIQ) by three treating physicians, *i.e.* Dr. Lynessa Alonso, Dr. Stacey Orwig, and Dr. Geo Shotick. (D. 5-3 at ECF p. 41; D. 5-4 at ECF p. 48; D. 5-6 at ECF p. 38). Records and examination notes of Dr. Donald Corey from

the Central Illinois Pain Management Clinic on referral from treating physician Alonso were also presented. (D. 5-2 at ECF pp. 15-20). Opinions from two consultative examiners were also before the ALJ: SSA Consultative Psychologist Alan Jacons and SSA Consultative Doctor Donald Habecker. (D. 5-2 at ECF pp. 65-75; D. 5-3 at ECF pp. 1-17), as well as a medical consultant's review of Ms. Belk's physical RFC assessment performed on April 27, 2007 by Dr. Henry Rohs. (D. 5-3 at ECF pp. 18-25). At the hearing before the ALJ, Ms. Belk testified as well as Vocational Expert Jim Ragains. (D. 5-7 at ECF pp. 89-110).

The ALJ ultimately concluded that Ms. Belk was not disabled. In reaching this conclusion, the ALJ made the following finding regarding Ms. Belk's RFC:

> The claimant has not demonstrated that she lacks the residual functional capacity to perform light and sedentary work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b); the limitation to light work is because of all her severe and non-severe impairments and symptoms combined (degenerative disc disease with pain, hypertension, obesity, COPD, and diabetes in combination with the non-severe impairment of migraines); the limitation to light and sedentary work means she can perform all the functions (sitting, standing, walking, lifting, etc.) of light and sedentary work except: the claimant should not climb ladders, ropes or scaffolds or work at unprotected heights (due to obesity, back and leg pain from degenerative disc disease, hypertension symptoms, COPD symptoms and medication side effects, in combination with the non-severe impairment of migraines); the claimant should perform no more than minimal bending, stooping, or twisting due to degenerative disc disease and back pain; she is limited to positions that allow her to occasionally change position between sitting and standing and no jobs that require prolonged walking (more than 10-15 minutes at a time) due to back and leg/hip pain and obesity; the claimant should have no concentrated exposure to respiratory irritants or temperature extremes due to her asthma/COPD.

(D. 5 at ECF p. 25). This finding is the primary dispute before the Court.

### III

Ms. Belk argues that the ALJ in making its RFC finding failed to follow the treating physician rule, failed to properly determine Ms. Belk's RFC as ordered by

the Appeals Council, and failed to properly evaluate Ms. Belk's credibility. She also argues that the Appeals Council failed to consider new and material evidence. The Court will address each of these arguments in turn.

## A

First, Ms. Belk argues that the ALJ failed to follow the treating physician rule. "A treating physician's opinion is entitled to 'controlling weight' if it is 'well-supported by medically acceptable clinical laboratory diagnostic techniques and is not inconsistent with other substantial evidence.'" *Cambell v Astrue,* 627 F3d 299, 306 (7th Cir 2010), quoting *Larson v Astrue*, 615 F3d 744, 749 (7th Cir 2010), quoting 20 CFR § 404.1527(d)(2). An ALJ must provide "good reasons" for discounting such opinions. Id. Should an ALJ provide such "good reasons" for discounting a treating physician's opinion, she must then decide what weight to give that opinion. *Campbell*, 627 F3d at 308. That decision is guided by several factors, including: "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." Id, quoting *Larson*, 615 F.3d at 751, and citing 20 CFR § 404.1527(d)(2); 20 CFR 404.927(d)(2).

In the present case, three separate physicians treated Ms. Belk: Dr. Alonso, Dr. Orwig, and Dr. Shotick. As indicated by the MIQs completed by these doctors, and as essentially conceded by the Commissioner (see D. 17 at ECF pp. 6-7), the findings of all three treating physicians supported a finding that Ms. Belk is disabled, although the reasons supporting the individual findings varied somewhat. The ALJ's rejection of these opinions can be boiled down to two reasons: 1) the treating physicians' opinions were not supported by objective medical evidence and 2) those opinions relied too heavily on Ms. Belk's subjective complaints of pain. (D. 5 at ECF pp. 25-29). Neither of these reasons is "good" because they do not adequately justify the ALJ's decision to reject the treating physician opinions or give them controlling weight. *Campbell,* 627 F3d at 306.

4

First, the treating physicians' opinions were supported by objective medical evidence. Indeed, the ALJ at some length discusses those objective medical records and tests. (D. 5 at ECF p. 27). The ALJ, however, in interpreting those records herself, believed the treating physicians came to the wrong conclusions. She essentially made her own medical findings based upon the objective medical records and tests. This she cannot do.

"An ALJ must not substitute [her] own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v Apfel*, 227 F3d 869, 870 (7th Cir 2000), quoting *Rohan v. Chater*, 98 F3d 966, 968 (7th Cir 1996). As the Seventh Circuit "has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." Id. In her opinion, the ALJ cites the objective medical evidence as follows:

> The doctor's own reports in her chart notes fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact able to sit only one hour out of eight, etc.; the doctor did not build an adequate bridge between reliable medical findings and work related limitations; more weight is given to the objective findings in the record (Exhihits 9F, 11 F and 12F). Examinations after August of 2007 do not support the degree of limitation indicated by Exhibit 9F. MRI findings in October of 2007, ordered by this doctor, demonstrated only mild disc and facet degeneration at L4-5 without central canal stenosis or exit neural forarninal encroachment (Exhibit 11 F). An MRI of the lumbar spine performed on September 10, 2010, and compared with the October 2007 study, revealed abnormal signal in L4 and LS pars, though there was not much spondolysis. Degenerative disc dessecation at L4-5 and L5-S l was present without bulge or protrusion and there was mild facet arthropathy without specific nerve root encroachment (Exhibit 16F/5-6).

(D. 5 at ECF p. 27). This Court does not presume to have the skill to interpret these MRI findings, and the ALJ should not have done so either.

Rather than reinterpreting the objective medical evidence as a basis for rejecting the treating physicians' opinions, the ALJ should have relied on other

5

contradictory medical opinions which interpreted those results. She did not do so, however, presumably because, as even the Commissioner concedes, the ALJ's ultimate RFC finding does not mirror any of the other opinions in the record either. ([D. 17 at ECF p. 9](D. 17 at ECF p. 9)). This supports the conclusion that the ALJ improperly rendered her own interpretation of the objective medical evidence presented.

## B

The primary reason given by the ALJ in rejecting the treating source physician opinions was her conclusion that those opinions relied too heavily on Ms. Belk's subjective complaints of pain and impairment. ([D. 5 at ECF p. 27](D. 5 at ECF p. 27)). A claimant must provide credible testimony and objective evidence to qualify for disability insurance benefits for allegations of disabling pain. *Moothart v Bowen*, 934 F.2d 114, 117 (7th Cir 1991). "Although an ALJ's credibility determination is usually entitled to deference, 'when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision.'" *Clifford v Apfel*, 227 F3d 863, 872 (7th Cir 2000), quoting *Herron v. Shalala*, 19 F3d 329, 335 (7th Cir 1994).

In discrediting Ms. Belk's complaints of pain and impairment, as already found by this Court, the ALJs improperly conducted her own interpretation of the objective medical evidence. Beyond that, the ALJ cited the following as a reason for doubting the Ms. Belk's evidence regarding her pain:

> She manages her level of pain with medication although she continues to have subjective pain and limitations due to pain. The claimant states that her activities are limited but she testified or reported that she goes grocery shopping, reads romance novels, watches television, visits with her children, plays computer games, does cross-word puzzles, and vacuums.

([D. 5 at ECF p. 29](D. 5 at ECF p. 29)).

First, all three of her treating physicians indicated that Ms. Belk could not completely relieve her pain with medication without unacceptable side effects. ([D. 5-3 at ECF p. 43](); [D. 5-4 at ECF p. 50](); [D. 5-6 at ECF p. 40]()). Secondly, there is nothing about Ms. Belk's activities cited by the ALJ which are in any way inconsistent with the level of pain or impairment claimed by her. The Court fails to see how reading romance novels, watching television, visiting with children, doing cross-word puzzles, or playing computer games somehow demonstrates that Ms. Belk is does not have the pain and impairment she claims. One need not be in a nearly total state of incapacitation before one is impaired, which the ALJ seems to be suggesting by citing these activities as evidence that Ms. Belk's claims are incredible. Likewise, although grocery shopping and vacuuming involve more activity than reading or watching television, those activities are not inconsistent with Ms. Belk's claims. Nowhere does she or her treating physicians suggest that she is totally incapable of *any* activity; the evidence only suggest that she is incapable of prolonged, sustained activities which involve sitting or standing. Neither grocery shopping nor vacuuming necessarily require sustained, prolonged standing or activity.

## C

In sum, the evidence in the record reveals that Ms. Belk's complaints of pain and impairment remained consistent to her various treating physicians and other examiners throughout the period of collection of evidence for the disability determination. Moreover, the treating physicians not only relied upon Ms. Belk's consistent complaints of pain and impairment when opining on her RFC, but they also based their conclusions on objective medical evidence. Although the objective medical evidence is of course subject to interpretation, that interpretation should be done by medical professionals, not an ALJ. The ALJ improperly supplanted her own interpretation of the objective medical evidence for that of the treating medical professionals in this case. Accordingly, the ALJ provided an insufficient basis for refusing to give the treating physician opinions controlling weight.

As a final comment on this issue, the Court agrees with Ms. Belk that the ALJ's decision is particularly puzzling in this case in light of the previous remand by the Appeals Council. (D. 8 at ECF pp. 17-18; D. 5-5 at ECF pp. 9-10). In remanding the ALJ's first decision, the Appeals Council stated that upon remand the ALJ will:

> Give further consideration to the treating source opinion pursuant to the provisions of 20 CFR 404.1527 and 20 CFR 416.927 and Social Security Rulings 96-2p and 96-Sp, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1512 and 20 CFR 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.
>
> Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments (20 CFR 404.1527(f) and 20 CFR 416.927(f) and Social Security Ruling 96-6p).
>
> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404, 20 CFR 1545 and 20 CFR 416.945 and Social Security Ruling 96-8p).

(D. 5-5 at ECF pp. 9-10). The ALJ's decision before the Court now still suffers from the same defects as the first decision.

IV

Ms. Belk also argues that the Appeals Council failed to consider new and material evidence. (D. 8 at ECF pp. 21-22). In light of this Court's decision to remand this case, the Court need not decide whether the Appeals Council committed the error claimed by Ms. Belk. The ALJ may and should consider any new evidence presented by Ms. Belk on remand, including the evidence previously submitted to the Appeals Council, should the consideration of such evidence even be necessary in light of this Court's ruling.

## V

For the reasons stated herein, this Court REVERSES the decision of the ALJ and REMANDS this case pursuant to Sentence 4 of 42 USC § 405(g) for further proceedings consistent with this Order and Opinion. See 42 USC § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing").

This case is terminated.

Entered on June 25, 2014

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE
